UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-cv-61666-LEIBOWITZ/REID

**NATALIYA BOBADILLA**,

   *Plaintiff*,

v.

**UOI GROUP, INC. d/b/a ASKANELI RESTAURANT and OLEKSANDR UVAROV**,

   *Defendants*.
_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court on Defendants' Motion for Partial Summary Judgment [Def.'s Mot., ECF No. 54], filed on July 24, 2024, and Plaintiff's Motion for Summary Judgment as to Liability [Pl.'s Mot., ECF No. 55], filed on July 24, 2024 (the "Motions"). The parties have responded to the Motions [ECF Nos. 65, 68], and the Defendants replied to Plaintiff's Motion [ECF No. 70]. For the foregoing reasons, Defendants' Motion [ECF No. 54] is GRANTED in part and DENIED in part, and Plaintiff's Motion [ECF No. 55] is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant Oleksandr Uvarov ("Uvarov") owns and UOI Group, Inc. operates Askaneli Restaurant (collectively, "Askaneli") in Fort Lauderdale, Florida where Plaintiff Nataliya Bobadilla ("Bobadilla") worked in a managerial capacity. [Joint Statement of Material Undisputed Facts ("JSF"), ECF No. 72 ¶¶ 1, 13]. Bobadilla claims she began working for Askaneli in December 2021, and worked around forty hours per week before the Askaneli's opening in May

2022, and more than sixty-five hours per week after the restaurant's opening. [*Id.* ¶¶ 4, 15, 16; Defendants' Statement of Material Undisputed Facts, ECF No. 54-1 ¶ 12]. In her position, Bobadilla regularly used Uvarov's credit and/or debit card to purchase goods and supplies from Home Depot, Sherwin Wiliams, Walmart, Costco, Premier Produce, Gordon Food Service, and Halperns. [Decl. of Nataliya Bobadilla, ECF No. 68-2 ¶¶ 13, 15].

Bobadilla claims that she began complaining to her employer in December 2021, regarding their failure to pay her minimum wages, and continued complaining of this every month thereafter until her termination, as she "never earned at least $684.00 a week."[1] [Decl. of Nataliya Bobadilla, ECF No. 68-2 ¶ 6; Dep. of Nataliya Bobadilla, ECF No. 54-4 at 58:24–59:25]. When Bobadilla confronted Uvarov about his failure to pay her for her work in January 2022, Bobadilla claims Uvarov said he would pay her later due to issues transferring money from Ukraine to the United States. [Dep. of Nataliya Bobadilla 57:18–58:4]. At some point in 2022, Bobadilla sent Uvarov a demand for approximately $12,000 in unpaid wages. [Dep. of Oleksandr Uvarov, ECF No. 55-2 at 172:18–173:7]. In all of 2022, Askaneli employed fifteen or more people for only about nine weeks. [JSF ¶¶ 23–43]. Bobadilla claims that she agreed to work for Askaneli for a monthly salary of $8,000 yet did not regularly receive that amount and she "repeatedly inquired" about the outstanding balances for each month. [Pl's. Interrogatories, ECF No. 68-1 at 9; *see* Decl. of Nataliya Bobadilla ¶ 12].

Bobadilla alleges that Uvarov asked her and her husband at a personal gathering why they had not had children yet and Bobadilla's husband remarked that they were undergoing in vitro

---

[1] This statement is belied by Bobadilla's answers to Defendants' first set of interrogatories. [*See* Pl's. Interrogatories, ECF No. 68-1 ¶ 12 ("During my tenure from December 9th, 2021, to June 2nd, 2022, I received a total of eight payments from Oleksandr Uvarov, as follows: $2,500 on 02/24/2022, $2,500 pm 3/28/2022, $2,500 on 4/05/2022, $2,500 on 04/26/2022, $2,500 on05/09/2922, $4,000 on 06/01/2022, $4,000 on 06/14/2022, and $4,000 on 07/01/2022.")].

fertilization ("IVF") treatments.  [Pl's. Interrogatories, ECF No. 68-1 ¶ 9].  Uvarov remarked to Bobadilla that she shouldn't anticipate any time off for maternity leave, and if she had children that she would have to raise them at the restaurant so she could continue to work.  [*Id.*; Dep. of Nataliya Bobadilla at 71:6-11].  Bobadilla maintains that she was required to return to work the day after she underwent surgery for egg retrieval and, due to her work schedule, had to perform progesterone injections in the kitchen of Askaneli.  [Pl's. Interrogatories, ECF No. 68-1 ¶ 9]. Throughout her employment at Askaneli, Bobadilla claims that Uvarov treated her and other employees disrespectfully, and even "beat up one male worker."  [*See, e.g.*, Dep. of Nataliya Bobadilla at 69:3–71:19; 108:17–109:7; 131:5–7; 133:25–137:20].  Two days after Uvarov's wife, Victoria, discovered Bobadilla was performing injections at work, Uvarov informed her that her salary would be reduced from $8,000 per month to $6,000 per month. [Pl's. Interrogatories, ECF No. 68-1 ¶ 9].  Then, just a couple days later in July 2022,[2] Askaneli terminated Bobadilla's employment without explanation.  [*Id.*; Aff. of Oleksandr Uvarov, ECF No. 54-2 ¶ 19].

Bobadilla brought this instant lawsuit under the Fair Labor Standards Act ("FLSA"), claiming that she was not paid minimum wage and overtime compensation to which she was entitled and that Askaneli retaliated against her for complaining of being underpaid.  She also sues under the Florida Civil Rights Act ("FCRA"), claiming that Askaneli discriminated against her for undergoing IVF and eventually terminated her employment in July 2022.  [Compl., ECF No. 1-2; Aff. of Oleksandr Uvarov ¶ 19].

---

[2] It is unclear, based on the record, whether Bobadilla was terminated in June or July 2022. [*Compare* Pl's. Interrogatories, ECF No. 68-1 ¶ 23 with Aff. of Oleksandr Uvarov, ECF No. 54-2 ¶ 19 and Decl. of Nataliya Bobadilla ECF No. 68-2 ¶ 5].  However, for purposes of these instant motions, whether she was terminated in June or July is immaterial.

**LEGAL STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In determining whether genuine issues of material fact exist, [the reviewing court]

resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (*citing Anderson*, 477 U.S. at 255).  However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### I.  Defendants' Motion for Partial Summary Judgment

In its Motion, Askaneli makes five separate arguments: (1) Bobadilla's discrimination claims fail because Askaneli was not an "employer" as defined by the FCRA, (2) Bobadilla's claims of FLSA retaliation fail because there is no evidence of a causal connection between her protected activity and her termination, (3) Bobadilla's unpaid overtime and minimum wages FLSA claims fail as to her employment in 2021 because she cannot show that she was covered by the FLSA, (4) Bobadilla's claims for unpaid minimum wages from February to June 2022 fail because she was paid too much, and (5) Bobadilla's claims for unpaid overtime from the beginning of her employment until May 2022 fail because she did not work more than forty hours per week.  [Def.'s Mot. at 1–2].  This Court addresses each argument in turn.

a. Askaneli is not an "employer" as defined by the FCRA.

"The language of the FCRA is plain and unambiguous.  It requires a plaintiff to show that the defendant is [an employer, defined as] a 'person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person.'"[3]  *Sinclair v. De Jay Corp.*, 170 F.3d 1045, 1046 (11th Cir. 1999)

---

[3]  A "person" includes an "individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or

5

(citing Fla. Stat. § 760.02(7)); *see* Fla. Stat. § 760.02(6); *Misquith v. Palm Beach Cnty. Health Care Dist.*, No. 20-cv-81123-AMC, 2021 WL 8055475, at *3 (S.D. Fla. Sept. 29, 2021), *report and recommendation adopted sub nom. Misquith v. Borrego*, No. 20-cv-81123, 2022 WL 782545 (S.D. Fla. Mar. 15, 2022), *aff'd*, No. 22-11194, 2023 WL 2156635 (11th Cir. Feb. 22, 2023).

Plaintiff argues that Askaneli should be considered an "employer" under the FCRA because she submitted a declaration stating that more than fifteen individuals were employed at Askaneli and identifies twenty-five individuals who worked at Askaneli at some point during her tenure. [Decl. of Nataliya Bobadilla, ECF No. 68-2 ¶¶ 10, 11]. However, Plaintiff also admits in her response to Defendants' Motion for Summary Judgment that there were only about eight or nine weeks in which Askaneli employed fifteen or more employees. [Resp. to Def. Mot., ECF No. 68 at 5–6; JSF ¶¶ 23–43; Aff. of Oleksandr Uvarov, ECF No. 54-2 ¶ 21; *see* Dep. of Nataliya Bobadilla at 36:17–23]. Even taking Plaintiff's declaration as true, it does not establish that Askaneli hired fifteen or more employees for *twenty or more calendar weeks* – it merely shows that Askaneli had more than fifteen employees at some point during 2022.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Because there is no evidence that this Court has been presented with that shows Askaneli employed more than fifteen employees for twenty weeks, as required under the FCRA, this Court finds that Askaneli was not an "employer" subject to the FCRA when Plaintiff was employed. Nor is there any evidence that Askaneli became an "employer" under the FCRA after

---

commercial entity; the state; or any governmental entity or agency." Fla. Stat. § 760.02(6). Thus, Askaneli is indisputably a person under the FCRA.

Plaintiff left her employment. Therefore, Askaneli is not subject to the requirements of the FCRA, and summary judgment must be granted in favor of the Defendants on Counts I and II, which are DISMISSED.

    b. There is no evidence of a causal connection between Bobadilla's complaints and her eventual termination.

"A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" *Ash v. Sambodromo*, LLC, 676 F. Supp. 2d 1360, 1373 (S.D. Fla. 2009) (citing *Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000)). Here, Defendants do not contest that Plaintiff engaged in activity protected under the FLSA nor do they contest that Plaintiff suffered an adverse action. [*See* Def.'s Mot. at 8–10]. Rather, Defendants argue that there is insufficient evidence to show a causal connection between the two as the lapse in time between Plaintiff's initial complaint and her eventual termination is too large. [*Id.*].

To prove a causal connection, a plaintiff must demonstrate "that that the protected activity and the adverse action were not *wholly unrelated*." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (emphasis in original) (citing *Clover v. Total System Services*, 176 F.3d 1346, 1354 (11th Cir.1999)). The Eleventh Circuit has held that this element is satisfied if the decision-maker was aware of the protected conduct and there was *close temporal proximity* between this awareness and the adverse employment action. *Id.* (emphasis added) (finding close temporal proximity where an employer terminated an employee seven weeks after the employer learned of the employee's complaint). "But mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "[I]n the absence of other evidence

7

tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* (citations omitted) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). The calculation of temporal proximity begins "on the date the employer gains knowledge of the protected expression." *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008) (internal quotation marks omitted) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)).

"In the absence of close temporal proximity, a plaintiff can demonstrate a causal connection by showing that his employer knew of the protected activity and that a series of adverse employment actions commenced shortly thereafter." *Steenback v. Fed. Express Corp.*, No. 12-61515-CIV, 2013 WL 12085475, at *6 (S.D. Fla. Aug. 21, 2013) (citing *Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 996 (11th Cir. 2010)). "However, any intervening retaliatory acts must have been material." *Entrekin*. 376 F. App'x at 996.

Bobadilla first complained to Askaneli about not being paid her wages in December of 2021, and then "every month until the restaurant opened[.]" [Dep. of Nataliya Bobadilla, ECF No. 54-4 at 58:24–59:25]. Beyond this, however, Bobadilla points to *no* evidence in the record of either specific details of these ongoing complaints or any sort of retaliatory actions taken by Askaneli against Bobadilla. Certainly, this record as presented by Bobadilla to the Court does not add up to a series of adverse employment actions taken against Bobadilla that would demonstrate a causal connection in the absence of temporal proximity. Thus, Plaintiff's claims of FLSA retaliation must depend on the temporal proximity of her initial complaint and her eventual termination.

Bobadilla admitted that she initially complained to Uvarov of being paid less than their

agreement in December 2021 and was terminated in July 2022 – seven months later. Because the determination of temporal proximity begins on the date the employer gains knowledge of the protected expression, *Raspanti*, 266 F. App'x at 823, the calculation begins in December 2021, regardless of Bobadilla's ongoing complaints of the same nature. Seven months between the initial complaint and her termination is simply too long to infer any sort of causation in the Eleventh Circuit which has found that mere temporal proximity, without more, must be "very close." *See Thomas*, 506 F.3d at 1364 (citing *Clark*, 532 U.S. at 273 for the proposition that a three or four month period is insufficient to infer causation). As discussed above, Bobadilla's *only* argument tied, with any sort of specificity, to the facts of this case is temporal proximity – she has not shown that Askaneli retaliated against her in any way beyond her termination seven months later. [*See generally* Resp., ECF No. 68; Dep. of Nataliya Bobadilla].

Based on the record presented to this Court, Bobadilla has offered *no* evidence of a causal connection between her complaints of being underpaid and her eventual termination. Bobadilla attempts to dispute this with various arguments, all of which are unconvincing. Bobadilla argues that the Eleventh Circuit has recognized that a "pattern of complaints can establish a causal connection even when the initial complaint was made several months before the adverse action" and cites *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998), for this proposition. [Resp. to Def. Mot. at 10–11]. However, *Wideman* does not stand for that proposition. The Eleventh Circuit there found a causal connection between a complaint and an adverse employment action where there was a "series of adverse employment actions [that] commenced almost immediately after management learned [the plaintiff] filed [an EEOC] charge." *Wideman*, 141 F.3d at 1457. This is not the case here; Bobadilla has offered no evidence that Askaneli retaliated against her for complaining of being underpaid before her eventual termination

9

seven months after her initial complaint.

Next, Bobadialla relies on *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999), to argue that "temporal proximity must be viewed in light of the employer's knowledge of the employee's ongoing protected activity." [Resp. to Def. Mot. at 11]. However, in *Farley*, the court found a causal connection because the plaintiff was terminated just seven weeks after his employer learned of his protected activity – establishing the requisite temporal proximity. *Farley*, 197 F.3d at 1337. *Farley* fails to help Bobadilla who was terminated seven months, not weeks, after Askaneli first learned of her complaints.

Finally, Bobadilla relies on *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006), to argue that where the time between the protected activity and adverse action is significant, other circumstantial evidence can establish causation. [Resp. to Def. Mot. at 11–12]. Bobadilla's reliance on *Hurlbert* again misses the mark. The court there, in a case regarding the Family and Medical Leave Act, not the FLSA, held that "[c]lose temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Hurlbert*, 439 F.3d at 1298 (internal quotation marks omitted). *Hurlbert* does not discuss situations in which a plaintiff can establish causation without temporal proximity. Regardless, even if Bobadilla's statement of law were correct, she has still offered no evidence that there was other circumstantial evidence of causation. She merely argues that her repeated complaints "coupled with the timing of her termination shortly after the Fourth of July holiday. . . provide sufficient circumstantial evidence of retaliatory intent." [Resp. to Def. Mot. at 11].

Simply put, the undisputed facts – that Bobadilla first complained of being underpaid seven months before her eventual termination – do not establish a causal connection between her

10

complaints and her termination. Bobadilla offers no evidence that she was ever retaliated against before her termination. Therefore, summary judgement must be granted in favor of the Defendants on the FLSA retaliation counts (Counts IV and IX) which are DISMISSED.

    c.  Bobadilla was not covered by the FLSA in 2021

The FLSA "mandates that an employee who is engaged in interstate commerce must be paid an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing 19 U.S.C. § 207(a)) (quotation marks omitted). "In order to be eligible for FLSA overtime . . . an employee must demonstrate that [s]he is covered by the FLSA. There are two possible types of FLSA coverage[:]" individual coverage and enterprise coverage. *Id.* (citations and quotation marks omitted).

<u>Individual Coverage</u>

"[A]n employee may claim 'individual coverage' if [s]he regularly and directly participates in the actual movement of persons or things in interstate commerce." *Id.* (citations and quotation marks omitted). "An employee is subject to individual coverage if [s]he is directly and regularly 'engaged in' interstate commerce" and "indirect or sporadic involvement in commerce is insufficient[.]" *Id.* (citing *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)). "The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne*, 448 F.3d at 1266 (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)). "For individual coverage to apply under FLSA, an employee must present evidence that he or she was (i) engaged in commerce or (ii) engaged in the production of goods for commerce." *Lopez v. Pereyra*, No. 09-cv-60734, 2010 WL 335638, at *5 (S.D. Fla. Jan. 29, 2010). Bobadilla makes no argument that

11

she was engaged in the production of goods for commerce, so this Court only considers whether she was "engaged in commerce" under the FLSA. [*See* Resp. to Def. Mot. at 14–18].

An employee is "engaged in commerce" where (1) she works for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees or (2) by regularly using the instrumentalities of interstate commerce in her work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel. *Thorne*, 448 F.3d at 1266. Defendants' business, a restaurant in Fort Lauderdale, Florida, is not an instrumentality of interstate commerce. Bobadilla instead argues that she regularly used the instrumentalities of interstate commerce in her work by "processing credit cards throughout the day, every day" because the "electronic signal transmitting the credit card transaction information travels through the phone lines or the internet, and the actual transaction is approved and processed in a different state." [Resp. to Def. Mot. at 14]. The processing of credit card payments by an employee *alone*, however, is likely insufficient to constitute interstate commerce. *See Hayes v. Coco Dulce, Inc.*, No. 19-cv-80368, 2019 WL 7371839, at *3 (S.D. Fla. Oct. 11, 2019) (concluding that a plaintiff's "processing of payments does not constitute interstate commerce."); *see also Thorne*, 448 F.3d at 1267 (doubting that credit card transactions alone could constitute an instrumentality of interstate commerce).

Bobadilla next argues that she would regularly purchase food supplies and produce from vendors such as Gordon Food Service, which is based in Grand Rapids, Michigan. [ECF No. 68-6]. However, Bobadilla's own exhibit shows that Gordon Food Service has three locations located in Florida, and Bobadilla admitted that she would call Gordon Foods to pick up supplies from one of their local stores which she believed was located in Davie, Florida. [ECF No. 68-6; Dep. of Nataliya Bobadilla 45:14–46:3]. Therefore, there is *no* evidence that Bobadilla has submitted to this Court that she "corresponded with merchants outside the state of Florida using the mail, phone,

12

or fax, and nor did [s]he produce evidence that he made purchases of goods from out-of-state vendors." *Thorne*, 448 F.3d at 1267; *cf. St. Elien v. All Cnty. Env't Servs.*, Inc., 991 F.3d 1197, 1198 (11th Cir. 2021) (vacating district court's finding that there was no individual coverage where the Plaintiff testified that she would call out of state customers and vendors three to five times a week, she called many customers who lived out of state for permission to charge their credit card, and would call out of state vendors to discuss billings and payments for purchases made at local stores). Beyond Bobadilla's argument (unsupported by her proffered evidence) that she processed credit card payments, received shipments from out of state supplier, and communicated with customers or suppliers beyond state lines, there is no evidence that she regularly used the instrumentalities of interstate commerce in her work. *See Hayes*, 2019 WL 7371839, at *3 ("The intrastate sale of products does not support Plaintiff's individual coverage contention."). Thus, there is *no* evidence that Bobadilla meets the requirements for individual coverage.

Enterprise Coverage

"[A]n employee is subject to enterprise coverage if he is 'employed in an enterprise engaged in commerce or in the production of goods for commerce[.]'" *Josendis*, 662 F.3d at 1298–99 (citing 29 U.S.C. § 207(a)(1)). "Commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof[.]" *Id.* at 1299 (citing 29 U.S.C. § 203(b)). "Enterprise" includes "the activities performed by a person or persons who are (1) engaged in 'related activities,' (2) under 'unified operation or common control,' and (3) have a 'common business purpose[.]'" *Id.* (citing 29 U.S.C. § 203(r)(1)). An enterprise is engaged in commerce or in the production of goods for commerce if it

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods

or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

*Id.*

Plaintiff's argument that Askaneli's annual gross volume exceeded the $500,000 threshold is that "it is reasonable to infer that a restaurant employing more than fifteen individuals . . . likely exceeded the $500,000 threshold." [Resp. to Def. Mot. at 13]. As Bobadilla admitted, Askaneli opened its doors for business in May of 2022 and had no income prior to the Askaneli's opening in May 2022. [Dep. of Bobadilla at 149:10–23; JSF ¶ 4]. Bobadilla has made *no* showing beyond pure conjecture that Askaneli's annual gross volume was greater than $500,000 in 2021, and this Court has no choice but to grant summary judgment in favor of defendant on this issue. Bobadilla was not covered by the FLSA's protections in 2021.

    d. Askaneli failed to show that Bobadilla is not entitled to any overtime between December 2021 and May 2022.

Askaneli's only argument that Bobadilla is not entitled to overtime before the restaurant opened is that she stated in her deposition that she worked "around 40" hours before the restaurant opened. [Def.'s Mot. at 16 (citing Dep. of Bobadilla at 54:17–22)]. Because this argument relies exclusively on a single statement from a deposition that, even by its own words, does not necessarily mean that there were no weeks when Bobadilla worked more than forty hours, this argument fails. Askaneli has failed to meet its burden to show that there is no material issue of fact as to whether Bobadilla worked more than forty hours in any week from December 2021 to May 2022. Thus, summary judgment is denied here too.

    e. Askaneli has not established that Bobadilla does not have an unpaid minimum wage claim for the period between February and July 2022.

Finally, Askaneli argues that Bobadilla cannot have an unpaid minimum wage claim

14

between February 2022 and the end of her employment in July 2022.  Bobadilla does not respond to this argument.  It is undisputed that Bobadilla was paid $2,500 in February 2022, $2,500 in March 2022, $2,500 in April 2022, $6,500 in May 2022, $8,000 in June 2022, and $800 in July 2022 (for two days of work).  [JSF ¶¶ 6–11].

While these facts make it *likely* that Askaneli paid Bobadilla more than the minimum wage during this period, Askaneli's motion is unfortunately insufficient for this Court to grant summary judgment.  To start, it is unclear from the motion (which makes no mention of the applicable pay period, or citations to relevant case law) what Bobadilla's pay period was.  An employer does not meet the FLSA minimum wage requirement by paying a cumulative salary that exceeds the minimum wage, "but the employer must adhere to this requirement for every pay period."  *Beck v. Fin. Tech. Corp.*, No. 7:16-CV-01845-LSC, 2017 WL 5668388, at *3 (N.D. Ala. Nov. 27, 2017) (citing *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1578 (11th Cir. 1985), *modified*, 776 F.2d 265 (11th Cir. 1985)).  This pay period is determined from the actual pattern of payments adopted by the parties.  *Id.*  Here, however, Askaneli not only offers no evidence of the pay period, but its own evidence creates a genuine issue of material fact as to what Bobadilla's pay period was.  Bobadilla was paid only once in some months (February–April 2022) and was paid multiple times in other months (May–July 2022).  [ECF No. 54-2 at 8–22].  It is thus impossible for the Court to determine based on the evidence presented to it that Bobadilla was not paid her adequate minimum wage *for each pay period* because there is no evidence of what the correct pay period was.  This alone is sufficient to deny summary judgment.

It is worth noting, however, that Askaneli additionally failed to cite any law in this section, as required under Southern District of Florida Local Rule 7.1(a)(1).  This, too, is grounds to deny Askaneli's motion.  *See* S.D. Fla. L. R. 7.1(a)(3).

For these reasons, summary judgment is denied. Bobadilla's FLSA wage and hour claims (Counts III and VIII) may proceed to trial.

## II. Plaintiff's Motion for Summary Judgment as to Liability.

Bobadilla attempts to move for Summary Judgment on three grounds: (1) that Oleksandr Uvarov was her "employer" under the FLSA, (2) that "Uvarov is jointly and severally liable to Plaintiff for her wages along with" UOI Group, and (3) Askaneli admits to a host of issues by not keeping adequate records of Bobadilla's hours. [Pl.'s Mot. at 4–10]. This Court will address each of these arguments in turn.

  a. Askaneli concedes that both Oleksandr Uvarov and UOI Group were Bobadilla's "employer" under the FLSA.

Bobadilla's first argument on summary judgment is that Defendant Oleksandr Uvarov should be considered an "employer" under the FLSA. Askaneli concedes this point, and thus, this Court need not analyze Bobadilla's argument. [Resp. to Pl.'s Mot., ECF No. 65 at 5]. Accordingly, summary judgment is GRANTED on this issue.

  b. Bobadilla's argument that Oleksandr Uvarov should be jointly and severally liable along with UOI Group suffers from deficiencies that requires this Court to deny her motion.

Under Federal Rule of Civil Procedure 56(c)(1), all parties that assert in a motion for summary judgment that a fact cannot be disputed must support the assertion by citing to the record. Bobadilla here makes statements about Oleksandr Uvarov's purported admissions but fails to cite to the record for these assertions. Such a failure constitutes grounds to deny the motion on this argument. *See Rahal v. Mussel Beach Rest. Inc.*, No. 17-cv-80442, 2018 WL 456212, at *4–5 (S.D. Fla. Jan. 17, 2018).

  c. The remainder of Bobadilla's arguments suffer from the same deficiencies, and she has not convinced this Court that summary judgment should be granted.

Bobadilla finally argues that "Defendants admit to FLSA jurisdiction, admit to never

16

paying Plaintiff overtime compensation, admit that FLSA applies to Plaintiff's work for Defendants, and admit to not maintaining any written records or evidence to show that the Plaintiff was paid overtime compensation and summary judgment should be entered as to liability leaving the sole issue of the amount of damages for trial." [Pl.'s Mot. at 6]. To prove this amalgamation of arguments, Bobadilla cites one line in Oleksandr Uvarov's deposition where he says that he did not keep records to show that Nataliya Bobadilla did not work more than forty hours per week because the "nature of her work" was different. [*Id.* at 9 (citing Dep. of Oleksandr Uvarov at 157:20–158:4)]. Bobadilla argues that the Court is therefore bound to accept her Statement of Claim. [*Id.*].

The issue with Bobadilla's arguments here is two-fold. First, her only citation to the record does not show that Askaneli admitted to any of her claims. Uvarov's one statement that he did not keep records that show that Bobadilla did not work more than forty hours a week does not obviate all issues of material fact as to Bobadilla's working hours. Nor does it establish whether Bobadilla is entitled to minimum or overtime wages. Second, Bobadilla fails to cite any law that if a *defendant* in an FLSA claim fails to produce records pertaining to a plaintiff's working hours that a court is "bound to accept" a plaintiff's statement of claim regarding her hours worked. [*Id.* at 9–10]. The few cases that Bobadilla does cite offers her some general helpful language, but merely reciting law without a meaningful connection to the facts of the instant case is grounds alone to deny a motion for summary judgment.

## CONCLUSION

For the reasons stated, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Partial Summary Judgment [**ECF No. 54**] is **GRANTED in part and DENIED in part**, and Plaintiff's Motion for Summary Judgment as to Liability [**ECF No. 55**] is **GRANTED in part**

**and DENIED in part.** Counts I, II, IV. And IX are **DISMISSED**. This case shall proceed to trial on Counts III and VIII, Bobadilla's FLSA Wage & Hour Claims.

**DONE AND ORDERED** in the Southern District of Florida on December 15, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record